# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 10-06523-JW |
| | Chapter 13 |
| William John Herrmann and Henrietta B. Herrmann, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court for confirmation of the plan filed by William John Herrmann and Henrietta B. Herrmann ("Debtors"). The Chapter 13 Trustee, James M. Wyman ("Trustee"), objects to confirmation, arguing that the plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3) and that the plan does not meet the applicable commitment period. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to contested matters by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following Findings of Fact and Conclusions of Law.

## <u>FINDINGS OF FACT</u>[1]

1.      Debtors commenced this bankruptcy case by filing a voluntary joint petition for relief under chapter 13 of the Bankruptcy Code on September 8, 2010. Debtors filed their schedules and statements with the petition. The schedules indicate that Debtors jointly own real property at 505 Cherokee Drive, Summerville, SC, which is encumbered by first and second mortgages held by Wells Fargo Home Mortgage and GMAC Mortgage, respectively. All of Debtors' other assets, including two vehicles, two bank accounts, and other items of personal

---

[1]      The following facts have been stipulated by the parties or were based upon information provided in Debtors' Schedules.

property, are listed as being jointly owned by Debtors, with the exception of Exxon Mobile and ESOP stock with a value of $1,650.00, which is listed as being owned by Mrs. Herrmann only.

2.      Debtors and the Trustee filed a Joint Statement of Dispute on November 11, 2010, containing certain stipulations regarding this matter, and the Court entered an Order Approving the Statement of Dispute on November 12, 2010.

3.      Mr. Herrmann is 80 years old and presently in good health, but does not work outside the home.  He receives $1,327.00 per month in social security income and $595.00 in pension income.

4.      Mrs. Herrmann is employed and earns income of $68,208.00 per year, which by itself is sufficient to bring Debtors' income above the median income in South Carolina of $51,374.00.

5.      On October 3, 2010, Debtors filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"), along with a signed statement by Mr. Herrmann declaring that his sole source of income is from his pension.

6.      Debtors did not list the ongoing receipt of Mr. Herrmann's social security income on Form B22C, Schedule I or in the Statement of Financial Affairs filed in this case.  They did list social security income on the Statement of Financial Affairs for previous years, but none for 2010.

7.      Debtors did not claim an exemption for Mr. Herrmann's right to receive social security income on Schedule C.

8.      Debtors' average monthly expenses are listed on Schedule J as $3,402.00.  The expenses appear to be shared by Debtors, with none of the expenses appearing to be specifically attributable to Mr. Herrmann or Mrs. Herrmann individually.

9.      According to Debtors' Schedules I and J, their monthly net income (average monthly income minus average monthly expenses) is $253.00.

10.     Debtors' plan, filed on October 5, 2010, proposes payments of $250.00 per month for 57 months. Debtors propose in the plan to cure arrearages on their mortgages by making payment to Wells Fargo Home Mortgage in the amount of $123.00 per month and GMAC Mortgage in the amount of $53.00 per month.  The plan provides that Debtors will pay less than 100% of general unsecured claims.

11.     Debtors did not commit any part of Mr. Herrmann's social security income towards payment of creditors.  According to Schedules I and J, it appears that Mrs. Herrmann's income will be used to pay all of Debtors' combined living expenses.  Since their schedules indicate that none of Mr. Herrmann's social security income would be applied towards the payment of their creditors or living expenses, it appears that Debtors would accrue a surplus from that source of $79,620.00 over the course of a 60-month plan.

12.     Debtors and the Trustee agree that the funds received from social security are excluded from the calculation of "current monthly income" under § 101(10A), and that the plan, as filed, meets the standards of disposable income under § 1325(b)(2).[2]

13.     The parties stipulated that Debtors' plan is sufficiently funded to pay approximately $3,514.00 to general unsecured claims, which constitutes approximately 4.8% of

---

[2]      When listing the statutory reference to the standard of disposable income, the parties did not specify a particular subsection of § 1325(b) that was applicable.  The Court assumes, based on the parties' exclusion of the term "projected" from their description of the standard,  that they are referring to "disposable income" standard under § 1325(b)(2).

the total claims filed, plus the scheduled amounts of claims for which a proof of claim had not

yet been filed, as of November 17, 2010.  The pool of general unsecured claims, as filed, or as

scheduled if not yet filed, totaled $74,296.21 as of November 17, 2010.[3]  Debtors' general

unsecured debt appears to be comprised solely of credit card debt, the majority of which is listed

as joint debt.[4]  It appears that the majority of these credit card accounts were opened prior to

2005.

14.     According to their Form B22C, Debtors, as joint filers, are above median income,

without the inclusion of the social security income.

15.     At the hearing, Debtors indicated that it was their position that Mr. Herrmann's

social security income is not subject in any way to their bankruptcy case, does not have to be

disclosed, and can be applied or used by Debtors for any purpose, including savings or luxury

items, without implication of the good faith or confirmation standards.

## STATEMENT OF THE ISSUES

The Trustee agrees that the plan meets the means test standard of disposable income

pursuant to 11 U.S.C. § 1325(b)(2),[5] but contends that Debtors' plan has not been proposed in

good faith, as required by § 1325(a)(3), because Debtors failed to disclose Mr. Herrmann's social

security income in their schedules and the plan allows Debtors to retain this social security

income, which amounts to a substantial surplus, without indication of a need or use for such

funds. Debtors argue that they are not required to report social security income on their schedules

---

[3]     The deadline to file proofs of claim expired on January 3, 2011.  As of the date of this Order, only
$63,269.40 of unsecured claims have been filed. Therefore, the plan as proposed would appear to pay approximately
5.5% of the general unsecured creditors' allowed claims.
[4]     Schedule F lists three credit card accounts that appear to be in Mrs. Herrmann's name only.  The total
unsecured debt represented by these accounts is $2800.
[5]     The Trustee does not appear to take a position regarding whether the plan satisfies the "projected
disposable income" requirement provided in § 1325(b)(1)(B).  The Court notes that it has interpreted "projected
disposable income" as meaning something different than "disposable income" under § 1325(b)(2).  In re Edmunds,
350 B.R. 636, 643-44 (Bankr. D.S.C. 2006).  See further discussion regarding the "projected disposable income"
requirement *infra*.

4

or devote such income to their plan pursuant to 42 U.S.C. § 407 (hereinafter § 407), which is

often called the "anti-assignment" or "anti-attachment" provision of the Social Security Act and

provides, in pertinent part, that:

> (a)     The right of any person to any future payment under this subchapter shall
> not be transferable or assignable, at law or in equity, and *none of the moneys paid
> or payable or rights existing under this subchapter shall be subject* to execution,
> levy, attachment, garnishment, or other legal process, or *to the operation of any
> bankruptcy or insolvency law.*
> (b)     No other provision of law, enacted before, on or after April 20, 1983, may
> be construed to limit, supersede, or otherwise modify the provisions of this
> section except to the extent that it does so by express reference to this section.
> (emphasis added)

## APPLICABLE LAW

### I.     Law in this District Regarding the Use of Social Security Income in a Bankruptcy Case

This Court has considered the issue of whether the use of social security income could be

considered in a bankruptcy case in four cases, with varying holdings depending upon the facts of

each case.[6]

The Court considered whether social security income could be taken into account in the

good faith analysis under § 1325(a)(3) in In re Allawas, C/A 07-06058-HB, slip op. (Bankr.

D.S.C. 2008) (Burris, J.).  Allawas involved a single debtor with below median income whose

primary income was from social security.  Id. at 2-3.   The debtor proposed to make payments on

a second vehicle, a motorcycle, through her chapter 13 plan by using her exempt Social Security

disability income, and the Trustee objected.  Id. at 3.  The debtor and the Trustee stipulated that

the debtor met the projected disposable income test of § 1325(b)(1)(B).  Id.  The debtor argued

that the exempt nature of social security income allowed her use of the funds in her discretion

under the definition of disposable income without consideration by the bankruptcy court.  Id. at

---

[6]        In two cases, the Court considered debtors' use of social security to deny the relief sought, and in two, the
Court declined to consider social security income, ruling in debtors' favor.

8.  The Trustee argued that a greater dividend could be paid to creditors if the expense for the motorcycle was prohibited, and therefore, such a use by the debtor was evidence of a lack of good faith.  Id. at 4-5.  Section 407 was not argued.  The Court found the debtor's use of social security income to retain the motorcycle while proposing only a 1% repayment to general unsecured creditors to be a factor indicating a lack of good faith in proposing the plan. Examining the totality of the circumstances, the Court held that the debtor had failed to meet her burden of demonstrating that the plan was proposed in good faith. Id. at 12.[7]

In the chapter 7 case of In re Calhoun, 396 B.R. 270 (Bankr. D.S.C. 2008) (Duncan, J.), the Court considered whether social security income could be considered as part of the totality of circumstances of a debtor's financial situation within the context of determining whether their chapter 7 case was filed in bad faith and whether the granting of relief under chapter 7 would be an abuse under § 707(b)(3). In Calhoun, the above-median, joint debtors were husband and wife. Id. at 271-72.  Mr. Calhoun received social security income, which the debtors included in Schedule I but then subtracted from Schedule J, to exclude it as a source for payment to creditors.  Id. at 276.  The Court held that social security income, even though exempt, should not be excluded from consideration in a totality of the circumstances analysis.  Id.   The Court noted that social security benefits are excluded from income calculations by the Bankruptcy Code in two instances: calculating "current monthly income" for purposes of determining a presumption of abuse under § 707(b)(2) and for purposes of calculating disposable income for above median debtors in a chapter 13 case under § 1325(b)(2).  Id.  However, Congress did not

---

[7]       In so ruling, the Court stated that:

> To clarify, this decision does not find that actual excess income, arguably resulting from excluded Social Security income, must be counted toward a debtor's current monthly income and thus towards his or her projected disposable income for the purpose of determining payments to unsecured creditors.  The point is rather that a Chapter 13 debtor seeking the extreme relief of bankruptcy must also pass the good faith test of § 1325(a)(3).

specifically exclude social security income from being considered under § 707(b)(3).[8]  Id.
Ruling that the social security income should be considered in determining the debtors' ability to
pay creditors, the Court found that allowing chapter 7 relief would be an abuse and indicated it
would dismiss the case if it was not converted to chapter 13.

In In re Siegel, C/A No. 06-02291-dd, slip op. (Bankr. D.S.C. Nov. 17, 2006) (Duncan,
J.), the Court considered whether joint chapter 13 debtors could utilize only a limited portion of
their social security benefits to satisfy § 1325(a)(6), which requires the debtor to demonstrate the
ability to make all payments proposed under the plan, without contributing all of such income to
the plan.  The debtors' income was below median and both debtors received social security
benefits.  Id. at 2.  The Trustee contended that the debtors must contribute all of the social
security income to pay creditors under the plan, not just a portion of it.  Id.  The Court held that
social security income is excluded from "current monthly income" under § 101(10A) and
therefore the Court could not compel the debtors to fund a plan with the benefits.  Id. at 3.
However, the debtors were not precluded from "voluntarily devoting a portion of that income to
a chapter 13 plan…."  Id. at 3 (citing In re Schanuth, 342 B.R. 601, 605 (Bankr. W.D. Mo.
2006).

In a recent case, the Court considered whether a non-filing spouse's social security
income was required to be included to fund the debtor's plan in order to satisfy the disposable
income standard of § 1325(b)(2) and the good faith standard of § 1325(a)(3) in In re Miller, C/A
No.10-05675, slip op. at 5 (Bankr. D.S.C. Jan. 11, 2011) (Duncan, J.).   In that case, the non-
filing spouse, who lived in a nursing home without any expenses, received social security income
and VA benefits.  Id. at 1.  Debtor proposed to fund her chapter 13 plan from her social security

---

[8]        This opinion was cited in In re Cranmer, 433 B.R. 391, 395-99 (Bankr. D.Utah 2010), discussed infra,
since a similar analysis of the totality of circumstances is used in the § 1325(a)(3) good faith determination.

income only, but the Trustee argued that the non-filing spouse's social security income should also be included because the debtor physically received it.  Id. at 2.  The Court first found that social security income was excluded from the definition of "current monthly income" and therefore excluded from the calculation of debtor's disposable income.  Id. at 4.  The Court also agreed with the Eighth Circuit's decision in Carpenter v. Ries (In re Carpenter), 614 F.3d 930, 936 (8th Cir. 2010), discussed infra, noting that 42 U.S.C. § 407 "unambiguously prevents a debtor from being forced to use social security income to fund [a] chapter 13 plan."  Id. at 5. After examining the totality of the circumstances, the Court concluded that the debtor's plan was proposed in good faith despite its exclusion of the non-filing spouse's social security income.  Id. at 5-6. The Court found it significant that the husband's social security benefits were issued in his name and that "the purpose of Social Security benefits is the support and maintenance of the receiver of those benefits."  Id. at 5.

Other than the case law cited above, an applicable state statute provides an exemption for social security income, which may be claimed by a debtor in a bankruptcy case. S.C. Code Ann. § 15-41-30(11a) provides that "the debtor's right to receive or property that is traceable to… a social security benefit" is "exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding."[9]

## II.    Other Relevant Precedent

The Fourth Circuit has not addressed the issue of whether the debtor's proposed use of social security income can be considered in determining good faith, but, in a pre-BAPCPA case, has indicated that it views compliance with the projected disposable income test and compliance with the good faith requirement as separate requirements. Solomon v. Cosby (In re Solomon), 67 F.3d 1128 (4th Cir. 1995).  In Solomon, the Fourth Circuit considered whether the debtor's

---

[9]    In this case, Debtors have not claimed an exemption for Mr. Herrmann's social security benefits.

entitlement to receive distributions of funds from an exempt IRA account constituted projected

disposable income for purposes of § 1325(b).  The Fourth Circuit concluded that hypothetical

distributions considered by the Bankruptcy Court should not be considered income under

§ 1325(b) because the debtor was not actually receiving distributions at the time of confirmation.

Despite concluding that the plan met the projected disposable income test, the Fourth Circuit

then stated that the debtor must still meet the separate requirement of demonstrating that, under

the totality of the circumstances, his plan was proposed in good faith under § 1325(a)(3) and

remanded case for such a determination, noting that "the good faith inquiry is intended to prevent

abuse of the provisions, purpose, or spirit of Chapter 13." [10]

Finally, in In re Edmunds, this Court held that the phrase "projected disposable income,"

which is used to determine payments in a chapter 13 case, may mean something different from

the means test standard of "disposable income" and that the good faith test of § 1325(a)(3) is an

independent requirement that must be satisfied. See 350 B.R. 636, 643-44 (Bankr. D.S.C. 2006)

("[T]he strict mechanical application of the Means Test does not necessarily satisfy Debtors'

burden of demonstrating good faith in the proposal of their plans, including whether they are

devoting sufficient income to their plan.") (citing In re Solomon, 67 F.3d at 1134). "Projected

disposable income" under § 1325(b)(1)(B) is determined in this District by using a forward

---

[10]      Courts in other jurisdictions have similarly held in post-BAPCPA cases that compliance with the good faith
requirement of § 1325(a)(3) is a separate requirement from compliance with § 1325(b).  See White v. Waage, 440
B.R. 563, 568 (Bankr. M.D. Fla. 2010) ("[S]trict compliance with the means test does not necessarily satisfy a
debtor's burden of demonstrating good faith in the proposal of his plan"); In re Boyd, 414 B.R. 223, 234 (Bankr.
N.D. Ohio 2009) (stating that the good faith requirement under § 1325(a)(3) provides a backstop for debtors who, in
reality, can afford to pay more than required under § 1325(b)); In re Kelly, 416 B.R. 232, 238 (Bankr. E.D. Va.
2009) (denying confirmation on good faith grounds even though means test was satisfied because debtor's current
financial situation allowed him to make significantly larger payments to creditors than proposed in this plan); In re
Owsley, 384 B.R. 739, 750 (Bankr. N.D. Tex. 2008) (stating that compliance with § 1325(b) is not dispositive of
good faith under § 1325(a)(3)); In re McGillis, 370 B.R. 720, 748 (Bankr. W.D. Mich. 2007) (stating that the court
may still deny confirmation on the basis that a debtor's failure to make an honest effort to repay creditors is a lack of
good faith even if the plan payment complies with § 1325(b));  In re LaSota, 351 B.R. 56, 59-63 (Bankr. W.D.N.Y.
2006) (holding that the requirement of good faith under § 1325(a)(3) is not rendered moot by narrow compliance
with the provisions of § 1325(b)).

looking approach where the Court looks at the amount of actual income expected to be received

in the applicable commitment period without restriction by the definition of current monthly

income or disposable income. Id. at 646.[11]

## CONCLUSIONS OF LAW

### I.    Debtors are Required to  Disclose Social Security Benefits

As an initial matter, the Court will address Debtors' argument that they are not required

to disclose the receipt of social security income in their schedules. In the undersigned's view,

this argument is not supported by the Bankruptcy Code, the case law in this District, the Official

Bankruptcy Forms, the policy underlying the Bankruptcy Code, or 42 U.S.C. § 407.   Section

521(a)(1)(B)(ii) requires Debtors to file a schedule of current income and current expenditures.

While most authorities state that social security income is expressly excluded from current

monthly income as defined in § 101(10A),[12] no exclusion for social security income is provided

---

[11]       This approach has been upheld by the Supreme Court in Hamilton v. Lanning (In re Lanning), 130 S.Ct.
2464 (2010),[11] which provided clarification regarding the meaning of the phrase, "projected disposable income."[11]
The Supreme Court held that "when a bankruptcy court calculates a debtor's projected disposable income, the court
may account for changes in the debtor's income or expenses that are known or virtually certain at the time of
confirmation." Id. at 2478. By adopting this forward looking approach, the Supreme Court rejected the mechanical
approach previously used by some courts which calculated projected disposable income by simply multiplying
disposable income, as calculated on Form 22C, by the number of months in the commitment period.
       Courts have reached different conclusions when determining the issue of whether social security income
should be included in the projected disposable income analysis in light of Lanning. While courts generally agree that
"disposable income" under § 1325(b)(2) excludes social security income by virtue of its incorporation of the term
"current monthly income," they have differed regarding the issue of whether "projected disposable income" under
§ 1325(b)(1)(B) means something different and therefore requires consideration of social security income for
purposes of determining whether the plan is confirmable when an objection is made pursuant to § 1325(b)(1).
Compare Fink v. Thompson (In re Thompson), No. 10-6018, 2010 WL 3583400, at *2-*3 (B.A.P. 8th Cir. Sept. 16,
2010) (finding that the exclusion of social security benefits from current monthly income and disposable income
precludes trustee's argument that such benefits must be included in the calculation of payments to unsecured
creditors to satisfy good faith under § 1325(a)(3)); In re Welsh, No. 10-61285-13, 2010 WL 4735994, at *6-*9
(Bankr. D.Mont. Nov. 16, 2010) (rejecting the trustee's argument based on Lanning that social security income
could be added back in when calculating projected disposable income, based on the plain language of § 101
(10A)(B) excluding social security income from CMI and § 407, and the fact that no showing had been made that
the case was unusual or that there were any changes in the debtors' income or expenses that were know or virtually
certain at the time of confirmation); with In re Cranmer, 433 B.R. 391, 395-99 (Bankr. D.Utah 2010) (concluding,
based on Lanning, that although social security income is statutorily excluded from CMI under § 101 (10A), social
security income presents the unusual case that must be accounted for to determine PDI).
[12]       Section 101(10A) has two parts.  Section 101(10A)(A) defines "current monthly income" as "the average
monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse

in § 521(a)(1)(B).  This Court has previously held that "[t]hough the means test of 11 U.S.C. §

707(b)(2) excludes from income certain benefits, like social security benefits …, the means test

does not override Debtors' duty under 11 U.S.C. § 521(a)(1)(B) to report current income and

current expenses." See In re Stone, C/A No. 07-03400, slip op. at 1 (Bankr. D.S.C. Sept. 10,

2007) (citing In re Ward, 359 B.R. 741. 745-746 (Bankr. W.D. Mo. 2007)).  This Court further

stated in Stone that:

> 11 U.S.C. § 707(b)(2)(A)(ii) is, pursuant to its terms, confined in a chapter 7 to
> determining whether there is a presumption of abuse and in a chapter 13 to
> determining whether a debtor's plan may be "approved" over an objection made
> pursuant to 11 U.S.C. § 1325(b).  This section does not negate a debtor's duty
> under 11 U.S.C. § 521(a)(1)(B) to report a debtor's true current income and
> expenses since such may be considered in determining whether a debtor's plan
> meets the standard for confirmation under 11 U.S.C. § 1325(a), including good
> faith and feasibility.

Stone, at 1 (citing In re Edmunds, 350 B.R. 636, 648-49 (Bankr. D.S.C. 2006)). The importance

of accurate and complete disclosure of assets was also recognized in In re Simpson, 306 B.R.

793, 797-98 (Bankr. D.S.C. 2003), where the Court stated that "debtors are responsible for

disclosing an accurate and complete schedule of assets with proper values and a truthful

statement of affairs in order to convey a complete and accurate portrayal of their financial

situation" and that "there is no allowance for selectivity in asset disclosure." Debtors are required

to disclose assets "even if they are believed to be worthless or unavailable to the bankruptcy

estate because they are exempt from execution."   In re Sanford, C/A 09-01116, slip op. at 7

(Bankr. D.S.C. Oct. 1, 2009) (citing In re Gartman, C/A No. 06-05307-JW, slip op. (Bankr.

D.S.C. Mar. 30, 2007)).  Furthermore, Schedule I of the Official Forms provides a specific line

item where "[s]ocial security or government assistance" is required to be disclosed.  A

---

receive)…."  Part (B) states that "current monthly income" includes "any amount paid by any entity other than the
debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the
debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes
benefits received under the Social Security Act…."

requirement to disclose social security income is also supported by the policy underlying the

Bankruptcy Code. See In re Mezvinsky, 265 B.R. 681 (Bankr. E.D. Pa. 2001) ("[A] discharge in

bankruptcy is a privilege- not a right- which must be earned. Upon filing for bankruptcy, it is the

debtor's obligation to be forthright in providing financial information…. The Bankruptcy Code

makes complete financial disclosure a 'condition precedent' to discharge."); see also Sanford,

C/A No. 09-01116-JW, slip op. at 6-7. ("In order to receive the benefits and protections of the

Bankruptcy Code, debtors have a duty to disclose whatever interests they hold in property by

filing complete and accurate schedules and statements.").

Debtors argue that the nondisclosure of their social security income is permitted under 42

U.S.C. § 407.  Section 407 "imposes a broad bar against the use of any legal process to reach all

social security benefits." Philpott v. Essex County Welfare Board, 409 U.S. 413, 417 (1973); see

also Keffeler, 537 U.S. at 383-84 (finding that § 407 operates to prevent legal process from being

used to deprive a social security income recipient of control of their social security income "in

order to discharge or secure discharge of an allegedly existing or anticipated liability"). Social

security benefits are intended to provide the recipient with the income required for ordinary and

necessary living expenses. Washington State Dept. of Soc. and Health Servs. v. Keffeler, 537

U.S. 371, 390 (2003). It has been observed that "the purpose of § 407 is to ensure that the needy

have the necessary resources for continuing basic care and maintenance." In re Crandall, 200

B.R. 243, 244 (Bankr. M.D.Fla. 1995) (citing Matter of Treadwell, 699 F.2d 1050, 1053 (11th

Cir. 1983)). The legislative history to the Social Security Act indicates that Congress intended

for social security benefits to be used to meet the most basic needs of the poor and to be

protected from seizure in legal processes against the beneficiary. See H.R. REP. NO. 92-231, at

156 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2989, 5142;[13] see also H.R. REP. NO. 98-25(I), at 82

(1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 301.[14]  However, neither the language of § 407 nor

its legislative history indicates that Congress intended to prohibit a requirement for disclosure of

this income or that mere disclosure in a bankruptcy case would conflict with the purpose and

protections provided by § 407. Furthermore, Debtors are not prejudiced by disclosure of social

security income in their schedules because any applicable exemption or exclusion would remain

effective to protect this income from being used for the payment of their debts.   For the

foregoing reasons, the Court concludes that Debtors are required to disclose social security

income in their schedules.[15]  Since Debtors' Schedule I does not list their social security income,

it must be amended in order to accurately report Debtors' income.

## II.        Good Faith Under § 1325(a)(3)

Debtors further argue the social security benefits should not be considered as part of the

good faith analysis under § 1325(a)(3) because they are specifically excluded from what a debtor

is required to pay to creditors in a chapter 13 plan by 42 U.S.C. § 407.  The Trustee argues that,

---

[13]        The committee report provides:

> Your committee wishes to emphasize its strong belief that if the benefits which would be provided under this program are to meet the most basic needs of the poor, the benefits must be protected from seizure in legal processes against the beneficiary. Therefore, any amounts paid or payable under this program would not be subject to levy, garnishment, or other legal process, except the collection of delinquent Federal taxes. Also, entitlement to these benefits would not be transferable or assignable.

[14]        The report provides:

> Based on the legislative history of the Bankruptcy Reform Act of 1978, some bankruptcy courts have considered social security and SSI benefits listed by the debtor to be income for purposes of a Chapter XIII bankruptcy and have ordered SSA in several hundred cases to send all or part of a debtor's benefit check to the trustee in bankruptcy.

> Your Committee's bill specifically provides that social security and SSI benefits may not be assigned notwithstanding any other provisions of law, including … the "Bankruptcy Reform Act of 1978.

[15]        At a minimum, current and future social security income must be disclosed in Debtors' Statement of Financial Affairs and Schedule I.

if approved, Debtors' plan would allow them to accumulate a substantial surplus without indication of a need or use for the funds, which is unfair to unsecured creditors and evidence that the plan has not been proposed in good faith.  The question of whether social security income may be considered in the good faith analysis in a chapter 13 case is one that has divided courts across the country.

Some courts have concluded that social security income is excluded from consideration in the good faith analysis under the Bankruptcy Code itself by virtue of its exclusion from "current monthly income" under § 101 (10A)(B). <u>See</u>, <u>e.g.</u>, <u>In re Thompson</u>, 439 B.R. 140, 143 (8th Cir. BAP 2010) (stating that "[c]onsidering the Debtors' exclusion of their Social Security Income from their plan payments as part of the good faith analysis would improperly render section 1325(b)'s ability to pay test meaningless"); <u>In re Barfknecht</u> 378 B.R. 154, 164 (Bankr. W.D. Tex. 2007) (stating that "the enactment of BAPCPA calls into doubt whether a debtor's retention of social security benefits may ever be a factor to consider under the good faith standard"); <u>In re Rotunda</u>, 349 B.R. 324, 333 (Bankr. N.D.N.Y. 2006) (declining to consider the debtor's failure to contribute all of their social security income to their plan as evidence of bad faith because it found that the Bankruptcy Code had limited its discretion to do so by excluding social security income from the definition of current monthly income in § 101(10A)(B), thereby excluding it from projected disposable income under § 1325(b)(1)(B)).

Some courts have concluded that social security income is excluded by 42 U.S.C. § 407. <u>See</u> <u>Carpenter v. Ries (In re Carpenter)</u>, 614 F.3d 930, 936 (8th Cir. 2010) (stating that § 407 "operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate" and that "§ 407 must be read as an exclusion provision, which automatically and completely excludes social security proceeds from the bankruptcy estate, and

not as an exemption provision which must be claimed by the debtor"); In re Welsh, No. 10-61285-13, 2010 WL 4735994 (Bankr. D.Mont. Nov. 16, 2010) (noting that 42 U.S.C. § 407 cannot be ignored and stating that it "does not consider social security benefits probative of a lack of good faith in proposing the plan under § 1325(a)(3)").

Other courts have concluded that social security income can be considered in both the projected disposable income analysis under § 1325(b)(1)(B) and the good faith analysis under § 1325(a)(3). See In re Cranmer, 433 B.R. 391 (Bankr. D.Utah 2010) (holding that a debtor's social security income had to be included in his projected disposable income and finding that a plan is not proposed in good faith when the debtor's social security income is excluded); In re Upton, 363 B.R. 528 536-37 (Bankr. S.D. Ohio 2007) (observing that the amendments wrought by BAPCPA did not change the requirement that a chapter 13 plan be proposed in good faith and noting that "neither the projected disposable income test, nor § 1325(a)(3)'s good faith requirement, either independently or in combination, permit debtors to accumulate savings while paying unsecured creditors less than 100%, [and] [u]nless the Debtors can show justification for reserving such an amount, the Court would find it difficult to approve the Debtors' plan as proposed"); see also In re Rodgers, 430 B.R. 910, 915 (Bankr. M.D.Fla. 2010) (denying confirmation on lack of good faith grounds where the debtors proposed a plan payment of $100 per month, but had a net monthly income surplus of over $2,000 from social security income).

### III.    Good Faith Analysis in this Case

Initially, it must be observed that Debtors in this joint case bear the burden of proof that the requirements for confirmation are met, including the burden of demonstrating that the plan is proposed in good faith. In re Namie, C/A No. 08-02192, slip op. (Bankr. D.S.C. Aug. 5, 2008). As instructed by the Fourth Circuit Court of Appeals, the Court is required to consider the

totality of the circumstances to determine whether there has been an abuse of the provisions, purpose, or spirit of Chapter 13 in the proposal of the plan. Id. (citing Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986)). Further, the Supreme Court has advised that a bankruptcy court has an independent obligation to examine whether a plan meets the requirements of confirmation, which necessarily includes determining whether the plan has been proposed in good faith under § 1325(a)(3). United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367, 1381 (2010) (finding that the bankruptcy has the authority and the obligation to instruct a debtor to conform his plan with the requirements of the Bankruptcy Code even where no objection to confirmation has been filed).

Next, it must be noted that the filing of a joint petition creates two separate bankruptcy estates. See In re Bunker, 312 F.3d 145, 150 (4th Cir. 2002) (noting that when spouses file a joint Chapter 7 petition, separate bankruptcy estates are created). The filing of a joint petition routinely leads to joint administration of the two estates, which simply means that the estates may be combined for purely administrative functions using a single docket. In re Hedrick, No. 09-33324, 2010 WL 3271246 (Bank. S.D.Ill. Aug. 17, 2010) (citing 2 COLLIER ON BANKRUPTCY ¶ 302.02[1][b], at 302-7 (16th ed. 2010)). Absent consolidation under § 302(b), "[t]he two estates remain separate, with each debtor required to separately schedule his or her assets, liabilities and exemptions." Id.; see also In re Chandler, 148 B.R. 13, 15 (Bankr. E.D.N.C. 1992) ("The filing of a joint petition by a husband and wife under § 302 … does not result in the automatic substantive consolidation of the two debtors' estates.")

The facts in this case indicate that Debtors jointly own their residence, two vehicles, and all personal property with the exception of Exxon Mobile and ESOP stock with a combined value of $1,650.00, which is listed in Mrs. Herrmann's name only.  It further appears that the

16

majority of the Debtors' unsecured debt is joint debt, consisting of primarily credit card and retail store debt totaling $74,296.21. Out of the $74,296.21 in total unsecured debt, $2,800.00 appears to be held in Mrs. Herrmann's name only. Schedule I, as presently filed, shows that Mr. Herrmann's only income is a pension of $595.00 per month and Mrs. Herrmann's net monthly income is $3,060.00, and therefore, their combined average monthly income is $3,655.00. Schedule J shows joint living expenses of $3,402.00, which appear customary in type and nature and for the equal benefit of both Debtors. Subtracting the living expenses from the reported income, Debtors propose an available monthly net income of $253.00 to fund their chapter 13 plan. Debtors' present plan proposes a projected disposable income monthly payment of $250.00 for 57 months. They propose to cure the arrearage owed on the two mortgages on their residence in the amount of $123.00 per month to Wells Fargo and $53.00 per month to GMAC. There is no evidence in the record demonstrating how the joint living expenses are paid or divided between Debtors. There is also no evidence regarding how Mr. Herrmann has used his social security income in the past. If the schedules are truthful, Debtors have accumulated little savings, property, or significant assets, and have not made unusual payments or transfers in the past. This would suggest that they have been using Mr. Herrmann's social security income for ordinary and necessary living expenses. No evidence has been presented showing that Mr. Herrmann's social security income is used for a particular or specialized personal need, such as a medical condition, as opposed to family needs. Therefore, it is reasonable to infer that Mr. Herrmann's social security income has been regularly used for the payment of Debtors' joint living expenses. See In re Barnes, 378 B.R. 774, 779 (Bankr. D.S.C. 2007) (finding that a non-filing spouse's annual bonus was used for household expenses of the debtor absent evidence to the contrary and should be devoted to the plan)

17

According to Schedules I and J filed by Debtors in this case, Mrs. Herrmann proposes to assume the burden of paying Mr. Herrmann's share of their joint expenses and deducts them from her available income before committing her projected disposable income.  This is proposed even though Mr. Herrmann has the ability to pay his share of the expenses through the use of his social security income. There is no evidence that Mr. Herrmann is a dependent of Mrs. Herrmann or is unable to pay for his own reasonable and necessary expenses. Regardless of whether Mr. Herrmann's social security income is excludable under 42 U.S.C. § 407 as a source for the repayment of his debts, its legislative history makes clear that Congress intended the protection to allow the recipient to pay his ordinary and necessary living expenses. <u>See</u> H.R. REPT. NO. 92-231, 92d Cong., 1st Sess. 156 (1971) 1972 U.S.C.C.A.N. 4989, 5142 (stating that in order to *meet the most basic needs of the poor*, social security benefits must be protected from seizure in legal processes against the beneficiary) (emphasis added); <u>Washington State Dept. of Social and Health Services v. Keffeler</u>, 537 U.S. 371, 390 (2003) (stating that social security benefits are intended to provide the recipient with the income required for ordinary and necessary living expenses*). Section 407 does not preclude this Court from considering whether it is good faith for a spouse, who does not receive social security income, to avoid paying her creditors to her full capability by deducting from her income the living expenses of a joint debtor who has the ability to pay his expenses from social security income.  As the Supreme Court recently emphasized in <u>In re Ransom v. FIA Card Services, N.A.</u>, one of the fundamental purposes of BAPCPA is "to ensure that debtors repay creditors the maximum they can afford." No. 09-907, 2011 WL 66438, at *6 (Jan. 11, 2011).  In this case, the issue is not whether Mr. Herrmann can be forced to use his social security income to pay his pre-petition debts, but rather whether Congress intended to

protect a joint debtor's social security from being to be used to pay his own normal and customary living expenses.  This Court does not believe that was Congress's purpose or intent.

In this case, Debtors' joint living expenses should be allocated fairly between them and Mrs. Herrmann should not be allowed to absorb more than her fair share of the expenses at the expense of her creditors.  If done in this case, Mrs. Herrmann will have more income available to pay her creditors.

Courts have considered a similar issue in cases where a chapter 13 plan is challenged on good faith grounds because the debtor's non-filing spouse is making little or no contribution to the payment of their reasonable joint household expenses. In such a situation, courts may require a chapter 13 debtor to demonstrate that the bankruptcy estate has not assumed responsibility for a disproportionate share of the reasonable household expenses in order to establish that the plan is proposed in good faith. See In re Waechter, 439 B.R. 253, 256-57 (Bankr. D.Mass. 2010); In re Louviere, 389 B.R. 502, 510 n.20 (Bankr. E.D. Tex. 2008) (clarifying that a challenge to the allocation of household expenses between a debtor and a non-filing spouse may be made by questioning the good faith of the debtor in proposing a plan in which she is absorbing more than her fair share of the household expenses).

In In re Waechter, the trustee objected to confirmation of a plan pursuant to § 1325(b)(1)(B) and § 1325(a)(3), wherein the debtor proposed to pay all of the joint household expenses without any contribution from her non-filing spouse, and which provided no dividend to her unsecured creditors. Even though the bankruptcy court found that the plan satisfied the requirements of § 1325(b)(1)(B), based on the fact that the debtor did not actually "receive" income from the non-filing spouse for the payment of household expenses, the court further stated that the debtor must still satisfy the good faith requirement of § 1325(a)(3) and found that

19

the debtor could not take full responsibility for paying household expenses and effectively subsidize her husband's income at the expense of her creditors.  While the court noted that it did not have the authority to order the non-filing spouse to pay his share of the household expenses, it denied confirmation based on the fact that the debtor's proposal of a plan, in which she paid a disproportionate amount of the couple's shared expenses, was not proposed in good faith.

While the proper allocation of expenses between joint debtors in a chapter 13 case has not been previously discussed at length in prior opinions in this district, the Court finds the approach taken in <u>Waechter</u> to be instructive.  Absent evidence to the contrary, it would appear that joint expenses should either be shared equally or in the proportion that each debtor's income bears to the total family income. <u>Cf.</u>, <u>In re Stampley</u>, 437 B.R. 825, 827-828 (Bankr. E.D. Mich. 2010) (concluding that in a bankruptcy case filed by only one spouse, when calculating the filing spouse's net disposable income, the joint expenses of the debtor and the non-filing spouse should be allocated in proportion to their income); <u>In re Boatright</u>, 414 B.R. 526 (Bankr. W.D. Mo. 2009) (allocating expenses in proportion to actual amounts contributed by each spouse where adequate evidence was presented demonstrating how much the non-filing spouse contributed on a regular basis to the household expenses). Under either allocation scenario, if Mrs. Herrmann devotes the funds she is paying for Mr. Herrmann's share of the monthly expenses to the plan,

she would have a substantial increase in monthly net income available to make plan payments and would significantly increase the proposed dividend to unsecured creditors.[16]

In the undersigned's view, using a significant portion of Mrs. Herrmann's income to pay Mr. Herrmann's share of expenses when he has resources available to pay those expenses—in fact, resources specifically protected by Congress for that purpose—at the expense of unsecured creditors indicates a lack of good faith on the part of Mrs. Herrmann. Furthermore, no evidence has been presented indicating that the payment of more than her share of the joint expenses by Mrs. Herrmann is reasonable or necessary. Even if Mr. Herrmann cannot be compelled to contribute social security income to pay his creditors, the Court can find a lack of good faith in this case based upon its finding that Mrs. Herrmann's payment of Mr. Herrmann's expenses is unreasonable and unnecessary.

As stated above, in order to determine of good faith under § 1325(a)(3), the Court uses a totality of the circumstances approach. Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982). In Deans, the Fourth Circuit set forth a non-exclusive list of factors to be utilized to determine whether a plan is proposed in good faith. "The good faith inquiry is fluid in that no single factor is dispositive on the issue of good faith and the Court will not simply count the factors weighing

---

[16]    By the Court's calculations, if the expenses are allocated evenly, each Debtor's share of the monthly expenses would be $1701.00. Reducing this figure by the amount of income Mr. Herrmann is currently contributing to the plan ($595.00) results in the amount of monthly expenses that Mrs. Herrmann proposes to absorb on Mr. Herrmann's behalf: $1106.00. The addition of this income to a 60-month plan would result in a dividend to general unsecured creditors of approximately 82% of the general unsecured claims.  If the expenses are allocated in the proportion that each Debtor's income bears to the total family income, Mrs. Herrmann's share of the monthly expenses (61.4%) would be $2088.82, and Mr. Herrmann's share (38.6%) would be $1313.17. If Mr. Herrmann's income contribution of $595.00 is subtracted from his share of the expenses, the resulting amount of $718.17 would constitute the amount Mrs. Herrmann proposes to absorb on Mr. Herrmann's behalf.  The addition of this income to a 60-month plan would result in a dividend to general unsecured creditors of approximately 54%.  The plan as currently proposed provides a dividend to general unsecured creditors of only 4.8%.
    These calculations are based on the stipulated amount of the pool of general unsecured claims, as filed, or as scheduled if not yet filed, which totaled $74,296.21 as of November 17, 2010. The Court notes that the deadline to file claims has passed and it appears that there are only $63,269.40 in unsecured claims filed. If this figure is used, the dividend to unsecured creditors would increase to 96.7% using the even allocation method and 63.6% using the proportional allocation method.

for or against Debtor to determine good faith or lack thereof." <u>In re Namie</u>, C/A No. 08-02192, slip op. (Bankr. D.S.C. Aug. 5, 2008).

Considering all of the factors set forth in <u>Deans</u>, the Court finds the following factors, when applied to the facts in this case, support a conclusion that the plan has not been proposed in good faith:  the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time payments will be made, and the debtor's honesty in representing facts. Specifically, the Court finds, as discussed *infra*, that Mrs. Herrmann is capable of making a significantly larger payment to her unsecured creditors if she does not assume Mr. Herrmann's share of the monthly expenses, and her proposal to pay Mr. Herrmann's expenses operates to deprive her creditors of a meaningful dividend.  The Court further observes that Debtors have proposed only a 57-month plan, even though their applicable commitment period is 60 months, and that Mr. Herrmann submitted a signed statement to the Court that his only source of income was his pension despite his regular receipt of social security income.  The Trustee also argued that Debtors' failure to disclose the social security income demonstrated a lack of good faith. Therefore, under the totality of the circumstances, the Court finds that Debtors have failed to

meet their burden of establishing that their plan is proposed in good faith and sustains the

Trustee's objection to confirmation for failure to meet the requirements of § 1325(a)(3).[17]

### IV.    Applicable Commitment Period

The Trustee further objects to confirmation on the grounds that the plan does not meet the

applicable commitment period because Debtors are above median and the applicable

commitment period is 60 months. The Court agrees. See In re Cushman, 350 B.R. 207, 212-23

(Bankr. D.S.C. 2006) (denying confirmation of above median debtors' chapter 13 plans because

they proposed a plan period of less than 60 months).

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Trustee's objection to

confirmation for failure to meet the requirements of § 1325(a)(3) and for failure to meet the

applicable commitment period is sustained. Debtors shall have 10 days from the entry of this

order within which to file amended schedules listing their receipt of social security income and

to propose an amended plan. Upon Debtors' failure to timely act, cause may exist to dismiss the

case.

---

[17]    In a recent opinion, the Bankruptcy Court in the Northern District of New York reached a different conclusion regarding whether the debtors' failure to contribute social security income towards the payment of their expenses showed a lack of good faith since it prevented the non-social security income from being applied to increase the debtors' plan payments. See In re Burnett, No. 10-31788, 2011 WL 204907 (Bankr. N.D.N.Y. Jan. 21, 2011). After directing the debtors to disclose the social security income in their schedules, the court overruled the trustee's objection for lack of good faith, citing § 407 and the Eighth Circuit's Carpenter decision for the proposition that debtors cannot be forced to include social security income in the bankruptcy estate. The court refused to find that it was *per se* bad faith for debtors to fail to include social security benefits in their plan, but did not appear to address the trustee's specific argument regarding the debtors' failure to use their social security income to pay their living expenses demonstrated a lack of good faith. Id. at *4-5 (relying on Johnson v. Vanguard Holding Corp., 708 F.2d 865, 868 (2d Cir. 1983), wherein the Second Circuit held that courts should not read into the [Bankruptcy Act of 1978] any per se limitations or requirements in respect to 'good faith' that Congress did not enact). No other factors indicating that the plan was not proposed in good faith were considered by the court.

To the extent that the Burnett decision holds that chapter 13 debtors' proposed use of social security income may never be considered for purposes of determining good faith, this Court respectfully disagrees. Furthermore, this Court finds that the Burnett decision is distinguishable from this case because there are other factors present in this case indicating that the plan was not proposed in good faith.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**02/09/2011**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 02/09/2011